**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| CONNOR BLIER,<br>　　　　　*Plaintiff,*<br><br>v.<br><br>SYCURIO, INC. F/K/A SEMAFONE, INC.<br>and LIVINGBRIDGE EP LLP,<br>　　　　　*Defendants*. | C.A. No. _____<br><br>**COMPLAINT**<br><br>**PLAINTIFF DEMANDS<br>A TRIAL BY JURY** |

Plaintiff Connor Blier ("Plaintiff" or "Blier"), as and for his complaint against defendants Sycurio, Inc. ("Sycurio") and Livingbridge EP LLP ("Livingbridge" and collectively with Sycurio, "Defendants"), alleges, based upon personal knowledge as to himself and his own actions and upon information and belief as to all other matters, as follows:

## PARTIES

1. Plaintiff is an individual and citizen of the State of Rhode Island.

2. Defendant Sycurio, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with a principal place of business at 99 Chauncy Street, Boston, Massachusetts 02111.

3. Upon information and belief, until approximately April 2022, Sycurio conducted business under the name "Semafone, Inc."

4. Defendant Livingbridge EP LLP is a limited liability partnership duly organized and existing under the law of the United Kingdom, with a principal place of business at 100 Wood Street, London, EC2V 7AN, United Kingdom.

5. On or about June 29, 2021, Livingbridge acquired Sycurio, which was then conducting business as Semafone, Inc. ("Semafone").

6. At all relevant times herein, Livingbridge controlled Sycurio's business operations, management of personnel, and operational strategies from Livingbridge's offices in the United Kingdom.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

8. This Court has personal jurisdiction over Defendants pursuant to R.I. Gen. Laws § 9-5-33 because the claims alleged herein arise in substantial part from Defendants' actions within the State of Rhode Island.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred within this District.

10. Venue is further proper in this District because the employment agreement between Plaintiff and Sycurio, then doing business as Semafone, dated December 10, 2021 (the "Employment Agreement") provides for exclusive venue in the federal and state courts of the State of Rhode Island. A true and accurate copy of the Employment Agreement is annexed hereto as Exhibit "A".

## FACTUAL ALLEGATIONS

### I. BACKGROUND

11. Sycurio is a data security provider that assists organizations with how they manage payment security, regulatory compliance and consumer data protection.

12. Livingbridge is a private equity firm, investing in business services, consumer, healthcare, education and technology media sectors.

13. Livingbridge controls Sycurio's management, operations, human resources, and finances, and as such, transacts substantial business in the United States.

14. Since Livingbridge's acquisition of Sycurio in June 2021, Livingbridge has controlled Sycurio's acquisition of new talent to Defendants' workforce, including by advertising available Sycurio positions via its website, www.livingbridge.com.

15. Further, four of the five members of Sycurio's Board of Directors, including its Chairman, are Livingbridge employees.

16. At all relevant times herein, Blier was an employee of Defendants, and Defendants were joint employers of Blier.

17. At all relevant times herein, Blier reported to both Sycurio and Livingbridge executives as his supervisors.

18. At all relevant times herein, the Defendants individually and collectively controlled the means and manner of Blier's performance and possessed the ability to supervise, hire, fire, pay and discipline Blier during the course of his employment with the Defendants.

19. At all relevant times herein, Defendants' supervisors possessed authority to effectuate personnel decisions concerning Blier's employment status with Defendants, including but not limiting to, the ability to pay, hire, fire, and discipline Blier.

20. At all relevant times herein, each of the Defendants was an employer within the meaning of the relevant statutes references herein.

## II. DEFENDANTS FAIL TO PROVIDE EQUITY OWED TO BLIER

### A. The Employment Agreement

21. Beginning in March 2021, Blier interviewed for the role of Sycurio's Vice President of Marketing with Defendants, including employees of Livingbridge.

22. During the interview process, Defendants presented a series of confidential documents prepared by Livingbridge relating to the role (the "Livingbridge Interview Documents").

23. As Vice President of Marketing, Blier would be, and was, responsible for generating a sales pipeline for Defendants' business based on representations made in the Livingbridge Interview Documents.

24. On December 10, 2021, Blier executed the Employment Agreement with Sycurio and joined the company as Vice President of Marketing.

25. The Employment Agreement was comprised of a letter dated December 10, 2021, and an Employee Confidentiality, Intellectual Property, and Restrictive Covenant Agreement enclosed therewith.

26. Both the December 10, 2021 letter and the Employee Confidentiality, Intellectual Property, and Restrictive Covenant Agreement were transmitted to Blier via DocuSign within the same DocuSign Envelope ID. Blier executed both documents simultaneously, via DocuSign, on December 10, 2021, at 20:29 GMT.

27. The Employment Agreement provided that Blier would start employment on January 10, 2022.

28. The Employment Agreement further provided that Blier's annual gross salary was to be Two Hundred Thousand U.S. Dollars ($200,000.00).

29. The Employment Agreement further provided that Blier was "eligible to participate in the Company-wide annual incentive scheme which [was] a maximum of 20% bonus potential based on your salary as of year-end" (the "Incentive Bonus"). Such a bonus would be payable

only if Blier remained employed by the company on the bonus payment date and if neither Blier nor the company had provided notice of intent to terminate Blier's employment.

30. The Employment Agreement further provided that Blier was to "receiv[e] sweet equity of 6,000 shares upfront" (the "Blier Equity"). Gary Barnett, then-CEO of Sycurio, conveyed to Blier that the value of the Blier Equity was forecasted to be approximately Nine Hundred Thousand Dollars ($900,000.00) upon an eventual exit.

31. As used in the Employment Agreement, "sweet equity" meant the highest pool of valued shares of Sycurio, reserved for board members and high-level executives of the company such as Blier.

32. Blier interpreted the term "upfront" in accordance with it plain and ordinary meaning, and as such, expected to receive 6,000 shares of sweet equity in advance of or contemporaneous with his start date on January 10, 2022.

33. To date, Defendants have failed to provide Blier with the Blier Equity.

**B.   Defendants Fail to Provide Sweet Equity Upfront**

34. Within weeks of commencing his employment in January 2022, Blier verbally complained to Mr. Barnett, as well as to various supervisors, that Defendants had failed to provide sweet equity upfront. In response, Blier was assured that the shares would be provided after a revaluation of the company, which he was informed was purportedly close to being completed.

35. Shortly after Blier complained about Defendants' failure to provide the promised equity, Blier also learned that Defendants had misrepresented to him their available products and services, the functionality and viability of existing products and services, and the existing sales pipeline, undercutting his ability to perform his job, among other oral misrepresentations and written misrepresentations in the Livingbridge Interview Documents.

36. In response to his complaints, around that time, Defendants began to strip Blier of resources necessary to perform his job, including by reducing his monthly advertising budget by approximately seventy percent (70%), by reducing the number of employees on Blier's team from five (5) to three (3), and by eliminating the 2022 marketing pipeline production budget. Defendants also reduced Blier's discretionary spend by nearly fifty percent (50%).

37. In July 2022, Sycurio appointed Nick Viney as its new CEO, replacing Mr. Barnett.

38. As of October 2022, Defendants had yet to provide Blier with the Blier Equity, despite Blier's repeated complaints to supervisors for Defendants.

39. Specifically, in the following months, Blier expressed his concern over that failure to Mr. Viney, Gary Lumsdon (Sycurio's interim Chief Executive Officer), Camilla Swyer (Sycurio's controller), Kevin Clancy (Sycurio's general counsel), Geoff Baldock (Sycurio's CFO), and various members of human resources.

40. During a call with Ms. Swyer in October 2022, Blier complained that he had been "chasing people for a year" regarding his sweet equity. In response, Ms. Swyer indicated that "some" sweet equity had been granted to employees in October 2022, that Livingbridge was aware of the issue, and that revaluation of the sweet equity was to be completed by the end of the week. Ms. Swyer further explained that the holdup by Defendants was related to tax considerations.

41. Despite Ms. Swyer's representations, Defendants continued to fail to provide Blier with the Blier Equity.

42. In addition, Defendants' human resources departments and Blier's supervisors repeatedly reassured Blier that he would receive his equity, and promised that they would fix the issue.

43. In November 2022, Blier told Mr. Viney that he was frustrated that he had not yet received the Blier Equity, and that he had had to chase various executives concerning the issue. In response, Mr. Viney expressed to Blier that he viewed the failure to provide such equity as inexcusable. Mr. Viney further told Blier that he viewed the refusal to tender the equity as deception to people when it's meant to be a motivational factor, and noted that he hoped to have the issue resolved by Christmas.

44. Following that conversation, Defendants still failed to provide Blier with the Blier Equity.

45. During an in-person meeting in December 2022 that took place in Livingbridge's offices in Boston, Massachusetts, Blier approached Mr. Viney to raise his concerns with respect to the equity yet again. Once again, Mr. Viney expressed sympathy to Blier, and promised to take action with respect to Blier's complaints.

46. During the same in-person meeting in December 2022, Sycurio's general counsel, Mr. Clancy, promised Blier that he would receive the Blier Equity soon because Defendants had completed the revaluation of the company. Mr. Clancy stated to Blier that the valuation was the cause of the delay.

47. Despite the promises from Mr. Viney, Mr. Clancy, and others, Defendants failed to provide Blier with the Blier Equity.

### III. DEFENDANTS TERMINATE BLIER'S EMPLOYMENT

48. Just weeks after the December 2022 meeting during which Mr. Viney and Mr. Clancy promised to resolve Blier's issues concerning his equity, on January 5, 2023, Defendants instead terminated Blier's employment.

49. At that time, Sycurio's Chief Revenue Officer informed Blier that Mr. Clancy and Mr. Viney were two key decision makers in the decision to terminate Blier's employment.

50. Blier was terminated just prior to being able to participate in the "Company-wide annual incentive scheme" which was to be based on his salary as of year-end.

### FIRST CLAIM FOR RELIEF
### Breach of Contract
### *(As Against Sycurio)*

51. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

52. The Employment Agreement was at all relevant times a valid and binding contract between Plaintiff and Sycurio under Rhode Island law.

53. Plaintiff fully performed his own obligations to Sycurio under the Employment Agreement and/or such performance has been excused.

54. Sycurio has materially breached the Employment Agreement by failing to provide Blier with "sweet equity of 6,000 shares upfront."

55. This breach has caused damage to Plaintiff in an amount to be proven at trial, but in excess of $75,000, exclusive of interest and costs.

### SECOND CLAIM FOR RELIEF
### Breach of the Covenant of Good Faith and Fair Dealing
### *(As Against Sycurio)*

56. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

57. Sycurio violated its implied covenant of good faith and fair dealing with respect to payment of the Incentive Bonus.

58. Specifically, Defendants terminated Plaintiff's employment on January 5, 2023, just five (5) days prior to Plaintiff's one-year anniversary with Defendants.

59. In this vein, Defendants executed its contractual requirements to evaluate Plaintiff's entitlement to a discretionary bonus of twenty percent (20%) his annualized salary in bad faith.

60. Defendants refusal to pay Plaintiff bargained-for-benefits which induced Plaintiff to join Defendants' organization constitutes bad faith under Rhode Island law.

61. As a result of Defendants' breaches of the duty of good faith and fair dealing, Blier has suffered actual and proximate damages of $40,000.

### THIRD CLAIM FOR RELIEF
### Violation of Rhode Island Payment of Wages Act (R.I.G.L. 28-14-1)
*(As Against All Defendants)*

62. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

63. The Blier Equity constitutes a wage under Rhode Island law.

64. The Blier Equity was a substantial part of Plaintiff's compensation.

65. Defendants' promises to provide the Blier Equity caused Plaintiff to execute the Employment Agreement and join Defendants' workforce.

66. There exist ascertainable and reasonable bases for calculating the amounts of wages due and owing from Defendants to Plaintiff.

67. The Blier Equity constitutes unpaid wages that were willfully withheld by Defendants.

68. As a result of the foregoing, Plaintiff is entitled to recover compensatory damages and liquidated damages in amount up to two (2) times the amount of unpaid wages or benefits owed, as well as reasonable attorneys' fees, costs and other appropriate penalties under Rhode Island law.

### FOURTH CLAIM FOR RELIEF
### Retaliation in Violation of Rhode Island Whistleblower Protection Act (R.I.G.L. 28-50-4)
*(As Against All Defendants)*

69. Plaintiff repeats and realleges the allegations set forth above as if fully set forth herein.

70. Plaintiff reported to Defendants on numerous occasions, both verbally and in writing, what Plaintiff reasonably believed to be violations of a law of Rhode Island, specifically, Defendants' failure to pay his wages in the form of the Blier Equity.

71. After Plaintiff reported the violations to Defendants, and as a direct result thereof, Defendants discriminated against Plaintiff with respect to his compensation, and with respect to the terms and conditions of his employment, by, *inter alia*, reducing his senior status within Defendants' organization and withholding resources necessary for Plaintiff to perform his job.

72. Ultimately, Defendants discharged Plaintiff as a direct result of Plaintiff's reporting violations of law to Defendants.

73. As a result of the foregoing, Plaintiff has suffered and will continue to suffer substantial losses, including the loss of past and future wages and benefits, as well as damages and irreparable harm to Plaintiff's personal and professional reputation.

74. As a result of the foregoing, Plaintiff is entitled to recover from Defendants compensatory damages and liquidated damages, plus attorneys' fees and expenses, punitive damages and pre- and post-judgment interest at the statutory rate, in addition to all other remedies available for violations of the Rhode Island Whistleblower Protection Act.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

a. Awarding Plaintiff compensatory damages in an amount to be proven at trial, together with pre-judgment interest;

b. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action as allowed by law; and

c. Awarding Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

                    Respectfully submitted,
                    Connor Blier
                    By His Attorneys,

                    */s/ Sally P. McDonald*
                    Sally P. McDonald, Esq. (#8265)
                    Matthew J. Pimentel, Esq. (#9049)
                    Cameron & Mittleman LLP
                    301 Promenade Street
                    Providence, Rhode Island 02908
                    Tel. (401) 331-5700
                    Fax. (401) 331-5787
                    smcdonald@cm-law.com
                    mpimentel@cm-law.com

Dated: October 17, 2023

P:\DOCS\STADZ\48449\PLEADINGS\2GI3444.DOCX